JOHN O'BRIANT v. THE STATE.

No. 12728. Delivered November 6, 1929.

The opinion states the case.

*Ferrell & Yates* of Roby, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—The information in this case charges in substance that appellant on or about the 1st day of January, 1929, did wilfully and without justification desert, neglect and refuse to provide for the support and maintenance of six of his children, they being then and there under the age of sixteen years and in destitute and necessitous circumstances; penalty, a fine of $25.00.

Since we will dispose of this case upon other grounds, we find it unnecessary to discuss many bills of exception relating to testimony admitted by the Court which had to do with contributions made by the neighbors to the support of the family of appellant. We will say in passing, however, that most of this was of questionable admissibility and some of it was clearly inadmissible.

The statute under which appellant was convicted reads as follows:

"Any husband who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his wife who may be in destitute or necessitous circumstances, or any parent who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his or her child or children under sixteen years in destitute or necessitous circumstances, shall be fined not less than twenty-five nor more than five hundred dollars or be imprisoned in jail not more than one year, or both." Art. 602, P. C.

Under this statute proof of two facts is indispensably necessary, namely: (1) That the children in controversy should be under sixteen years of age and in destitute or necessitous circumstances, and (2) that the action of the accused in deserting, neglecting or refusing to provide for them must be wilful.

On the first of these issues the State's testimony is deemed sufficient. The second issue is utterly void of testimony to support it, and since such a question is being constantly presented to this Court, we are here taking some pains to set down at length the testimony found in this record, with a reiteration of the rule of law governing such cases. We here give literally the testimony of appellant which was not contradicted upon the trial, but was in fact corroborated in many of its details by the State's testimony:

"I have lived on a farm up till this year. I was renting on the third and fourth. I do not own a farm. I made a crop in 1928.

Gathered part of it and would have gathered the rest but went to Big Springs to see about work, to get a job. I paid my bank account out of my cotton and paid my grocery bill. I had the J. W. McWhirter Company let my wife and children have groceries for 1928, and it amounted to $75.00 per month and over, or to over nine hundred dollars for the year. This was all paid except a hundred and sixty five dollars which I could not pay, and was supplies out of the grocery store. I furnished feed for their cow that come off of the farm, this last fall, the boy hauled about seven hundred bundles of feed home, about twelve hundred pounds of headed stuff, and wood. I believe the boy told me he bought one cord himself. I gave Gerald a bale of cotton the first week in January, which he sold before I left. He got thirty nine dollars and twenty cents and kept the seed for the cow. This was a small, or round bale. I also had an agreement with Gerald my boy that I would furnish him thirty five dollars per month to be paid in cash as they would use it. And I paid him ten dollars of this amount and left eight dollars with Pink O'Briant, to give him later and Pink O'Briant was to gather the cotton, there being about four or five bales unpicked, and pay it to my family that way.

"I was told that my wife had taken charge of the cotton and it was picked and sold when I got back. I was gone about a week. I left money with Pink O'Briant, with the cotton to have furnished thirty five dollars per month for some months if it had been applied that way. The children picked cotton part of the time for me. I paid them for every pound they picked, and more than enough extra to furnish gas and oil for their car. They have a good cow, and should have plenty of feed, and chickens. My oldest boy, Gerald, has made a hand for two years. He is as tall as I am, but not as heavy.

"I have lived on a farm, away from my family, since my wife moved to town. I have not lived with my wife, at all since August 1927. I visited there since until last fall, when my wife ordered me to stay away. Gerald also told me not to come on the place.

"I could not furnish the amount my wife and children spent and let her manage the conditions. Up until last year I bought the groceries and delivered them myself. I never spent over thirty five dollars per month for groceries on an average. As to whether they had enough then, they never complained. Owing to our frequent disagreements I made arrangements with the J. W. McWhirter

Company to furnish them groceries. And they were asked not to allow the account to go above thirty five dollars per month. But it went above that as I have stated. However as long as I could I paid up, but protested to Mrs. O'Briant and my oldest boy. Mrs. O'Briant said she would break me and then send me to the penitentiary. I am broke now. I could not farm longer and could not pay up my accounts. I had to sell my teams and tools and still owe a lot I can't pay. I went to Big Springs to get a job. I have been there since about the first of the year. I have worked some at farm work since I have been out there."

Construing the statute in question, Justice Lattimore in Mercardo v. State, 86 Tex. Crim. Rep. 559, has stated:

"The term 'wilful' has been often defined by our courts, and as applied to this statute, we think means not only with evil intent and malice, but that it also implies a set purpose and design."

Again it has been stated:

"There must be some showing * * * that the accused is so situated that he can support his minor children, but will not." West v. State, 9 S. W. (2nd) 738; Otto v. State, 98 Tex. Crim. Rep. 549.

The burden is upon the State to show the neglect to be wilful. Elms v. State, 99 Tex. Crim. Rep. 500; Bennett v. State, 4 S. W. (2nd) 63.

This record shows that the appellant on a rented place, without the assistance of his family, raised a crop, giving the net proceeds of same to his family, who lived in town apart from him and who were spending seventy-five dollars per month for groceries alone; that after doing this appellant had to sell his teams and tools to pay on his debts, leaving him without property, and being unable to pay longer, was prosecuted as a criminal. It would be a strange doctrine in America that mere inability to pay money was a crime for which a citizen's liberty could be taken.

Having lost control of his household, can the mismanagement of its affairs by the wife to the point where his children are destitute be imputed to the husband as a crime? Is the act of a tenant farmer criminal, who, unassisted by his family, fails to wrest from the soil sufficient means to keep that family in the city in comparative comfort? To sustain this conviction would seem to require an affirmative answer to both these questions. Such a construction of this statute would be as savage and unreasonable as it is contrary to that American spirit of fair play and hatred of oppression,

which have found vigorous expression throughout the history of our jurisprudence. Appellant's wife not only failed to deny that her grocery bill was nine hundred dollars per year, but she remained silent before his sworn accusation against her that she had stated she intended to break him and then send him to the penitentiary. The wife and child desertion statute was enacted to protect the destitute and helpless against a husband and father who could, but refused, to assist them. It was never intended that it should be used as a weapon of revenge by any who

"Gathering her brow like gathering storm
Nurses her wrath to keep it warm."

An affirmance under these facts would tend to transform a beneficent and wise law into an odious instrument of oppression. The trial court should have peremptorily instructed the jury to acquit.

Because the verdict of guilty is not supported by the evidence, the judgment of the trial court is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.